UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

- against -

DAVID CHRISTIE,

               Defendant.

------------------------------------X

08 Cr. 1244-01 (RWS)

<u>SENTENCING OPINION</u>

**Sweet, D.J.**

       On February 1, 2010, David Christie ("Christie" or "Defendant") was found guilty of one count of distribution and possession with intent to distribute 5 kilograms and more of mixtures and substances containing a detectable amount of cocaine and possession with intent to distribute 100 kilograms and more of marijuana, in violation of 21 U.S.C. § 846, and one count of importing into the United States from Jamaica five kilograms and more of cocaine and 100 kilograms and more of marijuana, in violation of 21 U.S.C. § 963. For the reasons set forth below, Christie will be sentenced to 360 months' imprisonment to be followed by 5 years' supervised release. Christie will also be required to pay a special assessment of $200 and to forfeit property in an amount to be determined.

1

**Prior Proceedings**

On May 20, 2009, Superseding Indictment 08 CR 1244-01 (RWS) was filed in the Southern District of New York. Count One charges that from 2000 to 2008, in the Southern District of New York and elsewhere, Christie a/k/a "Big Man", Selmor Reid ("Reid"), Philmour Gayle ("Gayle"), Wayne Eulett a/k/a "Primer" ("Eulett"), Gossett McPherson a/k/a "Glen" ("McPherson"), Leroy Collins a/k/a "Iroy" ("Collins"), Norma Dixon a/k/a "Joy" ("Dixon") and others distributed and possessed with intent to distribute five kilograms and more of mixtures and substances containing a detectable amount of cocaine, and possessed with intent to distribute 100 kilograms and more of marijuana, in violation of 21 U.S.C. § 846. Count Two charges that from 2000 to 2008, in the Southern District of New York and elsewhere, Christie, Reid, Gayle, Eulett, McPherson, Collins, Dixon and others imported into the United States from Jamaica five kilograms and more of cocaine and 100 kilograms and more of marijuana, in violation of 21 U.S.C. § 963.

On January 19, 2010, Christie appeared before this Court for a multi-day jury trial and, on February 1, 2010, was

found guilty of both Counts of Superseding Indictment 08 CR 1244-01 (RWS).

On January 6, 2011, counsel for Christie filed a sentencing memorandum requesting that the Court reduce the Guidelines adjusted offense level and be lenient when imposing a sentence in light of Christie's background and personal characteristics.

Christie's sentencing is currently scheduled for January 20, 2011.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

3

(2) the need for the sentence imposed —

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Christie's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

From 2000 through 2008, the defendants conspired to import multi-kilogram quantities of cocaine and marijuana from

Jamaica into the United States, and to distribute those drugs in the United States. The defendants used three different methods to transport the drugs, all of which involved hiding the drugs in commercial airplanes that departed from Montego Bay Airport and arrived at various airports in the eastern United States. Christie was involved in all three methods.

In the first method (the "Newark Method"), co-conspirators who supplied the cocaine and marijuana in Jamaica, such as Christie and Reid, would provide the drugs to other co-conspirators who worked at Montego Bay Airport, who, in turn, would ensure that the drugs were placed on Continental Airlines flights bound for Newark Liberty International Airport. The drugs were hidden behind a panel in the wall of "Bin Four," an area in the cargo section of the airplane.

Once the drugs were concealed on the planes in Jamaica, Christie or Reid would relay the tail number of the plane containing the drugs, via Sekou Gooden ("Gooden"), to Gayle, who worked as a luggage handler for Continental Airlines at Newark Airport. Gayle would identify the plane by the tail number, remove the narcotics from the cargo section, and hand them over to Gooden. Gooden would then give the drugs to

McPherson and Eulett, who would distribute them to customers in the New York area.

The Newark Method was used primarily in the winter season because it was easier to remove drugs from the planes in the winter, when customs inspectors patrolled the tarmac less frequently than they did in the summer. Defendants used the Newark Method at least as early as the winter of 2003 and 2004, when Reid was the principal source of supply in Jamaica. Christie and Eulett were not involved in the 2003 to 2004 winter season.

At the end of the first winter season, Reid and Gayle had a falling out and Gayle refused to continue working with Reid. As a result, Gooden replaced Reid with Christie, whom he had met through his friend, Eulett. Between 2004 and 2008, Christie replaced Reid as the principal source of cocaine and marijuana for the conspiracy.

During this period, the method worked in the same way except that Eulett was in charge of Christie's cocaine once it arrived in the United States. Eulett would receive Christie's portion of the drugs from Gooden and hold it in his apartment

until Christie sent customers to pick the drugs up from Eulett. McPherson would receive and distribute the remainder of the drugs to other customers. Over the course of the second winter season from 2004 to 2005, Christie sent more than 150 kilograms of cocaine to Newark Airport.

During the winter season from 2005 to 2006, the price of cocaine rose sharply in Jamaica. As a result, Christie started sending marijuana. Over the course of that season, Christie sent more than 150 pounds of marijuana to Newark Airport. Christie continued to send drugs to Newark Airport using the Newark Method until the co-conspirators were arrested as the end of 2008 and the beginning of 2009.

In the second method (the "Miami Method"), Christie would provide multiple kilogram quantities of cocaine to other co-conspirators who worked at Montego Bay Airport, who, in turn, would ensure that the drugs were placed behind the fuselage in the passenger cabin of American Airlines flights bound for Miami International Airport.

After the flight landed in Miami and cleared customs, Patrick Coulton ("Coulton"), a luggage handler for American

Airlines in Miami, would enter the aircraft and remove the drugs. Coulton would then receive instructions from Christie regarding the intended recipients of the drugs in Miami. The Miami Method was in place from at least early 2007 through March 2008, when Coulton was arrested in possession of approximately two kilograms of Christie's cocaine.

In the third method (the "Philadelphia Method"), Christie would provide multiple kilogram quantities of cocaine to other co-conspirators who worked at Montego Bay Airport, who, in turn, would ensure that the drugs were placed beneath the toilets of US Air flights bound for Philadelphia International Airport and other airports in the United States.

After the flight landed in the United States and cleared customs, certain co-conspirators, including Kathy Sanchez ("Sanchez"), would board the flight for the next leg of the plane's trip.

While on that flight, the Sanchez or the other co-conspirators would walk to the bathroom, remove the hidden narcotics, and conceal either on his or her person or in his or her carry-on baggage.

Because the plane had already cleared customs, the passenger would not be searched upon exiting the plane with the narcotics, and the co-conspirator would deliver the narcotics to other co-conspirators, including McPherson, for distribution within the United States. The Philadelphia Method was in place from at least 2000 until at least 2004.

**The Relevant Statutory Provisions**

Pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846, 952, 960(b)(1) and 963, the mandatory minimum term of imprisonment is 10 years and the maximum term of imprisonment is life.

If a sentence of imprisonment is imposed, a term of supervised release of at least 5 years is required, pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846, 952, 960(b)(1) and 963.

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. §§ 841(b)(1)(A), 846, 952, 960(b)(1) and 963.

The maximum fine that may be imposed is $4,000,000, pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846, 952, 960(b)(1) and 963. A special assessment of $100 per count is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. §§ 841(b)(1)(A), 846, 952, 960(b)(1) and 963, Defendant shall forfeit to the United States a sum representing all property, real and personal, that constitutes or was derived from the proceeds traceable to the commission of the instant offense.

**The Guidelines**

The November 1, 2009 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Because Counts One and Two involve substantially the same harm and the offense level is determined largely on the basis of the total quantity of the substances involved, pursuant

to § 3D1.2(d), the counts are combined into a single group.

The Guideline for the violation of 21 U.S.C. §§ 841(b)(1)(A), 846, 952, 960(b)(1) and 963 is found in § 2D1.1. Since Christie was involved in a conspiracy to import into the United States, distribute and possess with intent to distribute more than 150 kilograms of cocaine and more than 150 pounds of marijuana, the base offense level is 38, pursuant to § 2D1.1(c)(1).

Because Christie was an organizer/leader of the criminal activity charged in Counts One and Two, which involved five or more participants, a four-level increase in the offense level is warranted, pursuant to § 3B1.1(a).

Accordingly, the applicable offense level is 42.

Defendant has no prior criminal convictions. Therefore he has zero criminal history points and his Criminal History Category is I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 42 and a Criminal

History Category of I, the Guidelines range for imprisonment is 360 months to life.

The Guidelines range for a term of supervised release is five years, the minimum required by statute, pursuant to § 5D1.2(c).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to § 5B1.1(b)(2). Also, because the applicable Guidelines range is in Zone D of the Sentencing Table, Defendant is not eligible for probation, pursuant to § 5B1.1, Application Note 2.

The fine range for the instant offenses is $25,000 to $4,000,000, pursuant to § 5E1.2(c)(3)(A) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community

13

confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Upon consideration of all of the relevant factors, and the arguments set forth in the January 6, 2011 sentencing memorandum filed by Christie's counsel, it is concluded that the imposition of a Guidelines sentence is warranted.

## The Sentence

For the instant offenses, Christie will be sentenced to 360 months' imprisonment and 5 years' supervised release.

Christie is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that

Christie be supervised by the district of his residence.

As mandatory conditions of his supervised release, Christie shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; (4) refrain from any unlawful use of a controlled substance; and (5) cooperate in the collection of DNA as directed by the probation officer. Christie shall submit to one drug testing within fifteen days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has

15

reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that Defendant is able to pay a fine, and so the fine in this case shall be waived. A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

Defendant shall forfeit to the United States his interest in any and all property constituting or derived from any proceeds obtained directly or indirectly as a result of the narcotics conspiracy and any and all property used or intended to be used in any manner or part to commit and to facilitate the narcotics conspiracy.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for January 20, 2011.

It is so ordered.

New York, NY
January 18, 2011

_____
ROBERT W. SWEET
U.S.D.J.