UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA,

    -against-                         08 Cr. 1244 (RWS)

DAVID CHRISTIE ET AL.,           OPINION

             Defendant.

------------------------------------X

A P P E A R A N C E S:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/11

    <u>Attorney for Defendant David Christie</u>

    Richard Harris Rosenberg, Esq.
    217 Broadway - Suite 707
    New York, NY  10007


    <u>Attorneys for Government</u>

    PREET BHARARA
    United States Attorney for the
        Southern District of New York
    One St. Andrew's Plaza
    New York, NY  10007
    By:  Christian R. Everdell, Esq.
         Christopher D. Frey, Esq.

**Sweet, D.J.**

Defendant David Christie ("Christie" or "Defendant") has moved for an order of acquittal, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or, in the alternative, for a new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the reasons set forth below, his motion is denied.

**FACTS AND PRIOR PROCEEDINGS**

Christie was convicted on February 1, 2010, after a seven-day trial, of (1) participating in a conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine and 100 kilograms or more of marijuana from in or about 2000, up to and including in or about 2008; and (2) participating in a conspiracy to import into the United States from a place outside thereof those same quantities of those drugs during that same time period.

At trial, the Government presented the testimony of a number of witnesses, including three cooperating witnesses, Sekou Gooden ("Gooden"), Wayne Eulett ("Eulett") and Patrick Coulton ("Coulton"). Among other things, Gooden credibly testified about

1

how, starting in 2004, Christie supplied cocaine and marijuana to a man known to him as "Dave," who worked at the Montego Bay Airport; how "Dave" ensured that the drugs were concealed on Continental Airlines flights bound for Newark Liberty International Airport; how Christie would relay the tail number of the plane carrying the drugs to Gooden, who would in turn provide that information to Philmour Gayle ("Gayle"), a luggage handler for Continental Airlines at Newark Airport; and how Gayle would remove the narcotics from the identified planes, and hand them over to Gooden. In addition, both Gooden and Eulett testified about how Gooden would provide the drugs to Eulett, who was responsible for distributing the drugs to customers in the New York area.[1] Eulett himself described in detail how Christie asked him to be in charge of his drugs once they arrived in the United States, and how he would hold onto them in his Brooklyn apartment until Christie sent his customers to pick-up the drugs.

In addition, Coulton, who worked as a luggage handler for American Airlines in the Miami International Airport, testified at trial about how two individuals working at the Montego Bay Airport in Jamaica would ensure that drugs were placed behind the fuselage in the passenger cabin of planes bound for Miami; how he understood those drugs to have been supplied by

---

1 Prior to 2004, Gooden testified, the organization was supplied with narcotics by Selmor Reid in Jamaica, and relied heavily upon Gossett McPherson to distribute those drugs in the New York City area, among other places.

2

an individual he knew as the "Boss" (evidence adduced at trial, including a voice identification by Coulton and telephone records, demonstrated that the "Boss" was, in fact, Christie); how he would remove those drugs from the aircraft; and how he would receive instructions from the "Boss" about who to deliver those drugs to in Miami. Coulton testified that his involvement in this criminal activity took place from at least as early as 2007, and continued through March 2008.

In addition, at trial, the Government presented physical and documentary evidence, including approximately two kilograms of Christie's cocaine that had been seized from Coulton at the time of his arrest in Miami, consensually recorded telephone calls between Gooden and Christie, and Christie's own post-arrest statements in which he admitted his involvement in the charged conspiracy.

## DISCUSSION

In his motion, Christie advances two principal arguments in support of his multiple conspiracies theory: (1) the trial evidence established a separate and distinct agreement to import and distribute cocaine and marijuana using couriers and airplanes totally independent from Christie; and (2) the trial

evidence showed no connection or interdependence between the drug transportation route from Jamaica to Miami and the method employed at Newark Airport.

Christie argues, first, that the trial testimony of Gooden established Gooden's own, separate and distinct agreement with others to import and distribute cocaine and marijuana using individuals and airplanes totally independent from Christie. See Brief of Defendant Christie (hereafter "Def. Br.") at 2. In fact, Christie argues the evidence established that Gooden was separately negotiating and conducting narcotics transactions with Selmor Reid ("Reid"), Gayle, Eulett and others having nothing to do with Christie. Id.

The fact that Christie replaced Reid as the organization's source of supply in Jamaica, even if done unbeknownst to Christie, does not establish multiple conspiracies. Nor does the fact that Christie was not familiar or directly associated with Gayle establish multiple conspiracies. The Second Circuit has stated that "[t]o prove a single conspiracy, the Government need only show that the defendant 'agreed to participate in what he knew to be a collective venture directed toward a common goal.'" United States v. Berger, 224 F.3d 107, 114 (2d Cir. 2000) (internal

4

citation omitted). A "'single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations.'" United States v. Williams, 205 F.3d 23, 33 (2d Cir. 2000) (quoting United States v. Cambindo Valencia, 609 F.2d 603, 625 (2d Cir. 1979)). In fact, "'[t]he jury need not have concluded that the same people were involved throughout the entire period of the conspiracy in order to find one conspiracy.'" United States v. Aracri, 968 F.2d 1512, 1522-23 (2d Cir. 1992) (quoting United States v. Nersesian, 824 F.2d 1294, 1303 (2d Cir. 1987)).

To the extent Christie attempts to suggest that Gooden's testimony regarding his own prior bad acts — including historical narcotics involvement with individuals such as Cecil, Michael Barnes, Dada, Ross and Clive, none of which had anything to do with Christie — entitled him to a multiple conspiracies jury charge, that argument fails. Testimony concerning a witness's Giglio material does not open the door to a multiple conspiracies jury charge.

Christie next argues that the trial evidence, including the testimony of cooperating witness Coulton, established at least two different conspiracies, as the Newark and Miami operations were separate schemes, employing distinct individuals

5

without any interdependence or even knowledge of the others'
existence. See Def. Br. at 2.

During the relevant time periods, both the operations
at the airports in Newark and Miami relied on the narcotics
supplied by Christie in Jamaica to succeed. In addition, the
trial testimony established that Christie had narcotics customers
in both the New York City and Miami areas. A reasonable
inference drawn from all of the evidence presented at trial is
that Christie made use of the Miami airport, at least in part, in
response to various setbacks in the New York coconspirators' use
of the Newark airport.

As the Second Circuit has made clear, a single
conspiracy "may encompass members who neither know one another's
identities, nor specifically know of one another's involvement."
United States v. Sureff, 15 F.3d 225, 230 (2d Cir. 1994)
(internal citations omitted). Moreover, multiple conspiracies do
not exist where there are multiple agreements within an overall
venture involving a single defendant. United States v. Sir Kue
Chin, 534 F.2d 1032, 1035 (2d Cir. 1976).

In this case, the drug trafficking organization in
which Christie was a significant player successfully drew on old

and new co-conspirators to run a cocaine and marijuana importation and distribution operation for years. The evidence of the organization's use of the same means and methods (namely, commercial airplanes) during the life of the charged criminal activity supports the existence of a single conspiracy. See United States v. Maldonado-Rivera, 922 F.2d 934, 963-64 (2d Cir. 1990) (conspiracy with "several independent phases" involving overlapping participants sharing a single common goal constitutes a single conspiracy); Williams, 205 F.3d at 33; United States v. Heinemann, 801 F.2d 86, 92 (2d Cir. 1986) (finding that "switches in affiliation might occur from time to time" within a conspiracy and are not inconsistent with a single conspiracy). Here, the relationships among Christie, Gooden, Eulett and Coulton, among others, intertwined in such a way that they constituted a single supply chain and accordingly, a single overarching conspiracy.

## CONCLUSION

For the foregoing reasons, Christie's motion pursuant to Fed. R. Crim. P. 29 and/or 33 is denied.

It is so ordered.

**New York, NY**
**February 3, 2011**

ROBERT W. SWEET
U.S.D.J.