# The Law Offices of Steven E. Lynch

125 Maiden Lane, Suite 5C
New York, New York 10038
Telephone: (212) 498-9494
Fax: (212) 498-9320
steven@stevenelynch.com

October 23, 2020

The Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl St.
New York, NY 10007
*By ECF*

        Re:  *United States v. David Christie, et al.*, S1 08 Cr. 1244 (DLC)

Dear Judge Cote:

      I respectfully request that you modify the 240-month sentence of imprisonment imposed on Mr. Christie on February 3, 2011 to time served pursuant to *United States v. Brooker*, --- F.3d ---,  (2d Cir. Sept. 25, 2020), 18 U.S.C. § 3582(c)(1)(A), and 28 C.F.R. § 571.61, thereby permitting his immediate release to ICE custody and repatriation to Jamaica.   We move for this sentence reduction in light of Mr. Christie's obesity, hypertension, his age (54), and general poor health.  Mr. Christie's medical condition and age correlate to a significantly greater risk of a severe or fatal infection from COVID-19 and constitute "extraordinary and compelling reasons" to reduce his sentence.  As Your Honor has found, any assessment of the appropriate sentence for Mr. Christie today must factor "the health risks to particularly vulnerable inmates created by the pandemic."[1]

      **Procedural History**
David Christie has been in custody since January 15, 2009.  On February 21, 2010, a jury convicted Mr. Christie of conspiracy to distribute in excess of 100 kilograms of marijuana and five kilograms of cocaine in violation of 21 U.S.C. § 841 (b)(1)(a) and conspiracy to import the corresponding marijuana and cocaine in violation of 21 U.S.C. §§ 952, 960(b)(1).  On February 3, 2011, the Court sentenced Mr. Christie to 240 months of imprisonment.  He is currently serving his sentence at FCI Oakdale I, a low security facility, with a projected release date of February 26, 2026, approximately sixty-four months from today.

      On April 13, 2020, the BOP determined that Mr. Christie's ICE detainer disqualified him for home confinement and denied his request to serve the remainder of his sentence from his home in Jamaica.  By letter dated April 14, 2020, Mr. Christie made a *pro se* application for compassionate release based on the Covid-19 outbreak in FCI Oakdale I and his susceptibility to

---

[1] *United States v. Monzon*, 99 Cr. 157 (DLC), Dkt. 492 at 4.

a severe infection as a result of his high blood pressure. (Dkt. No. 284). On May 15, 2020, the Court denied Mr. Christie's motion for home confinement since 18 U.S.C. § 3624(c) grants the BOP with the sole authority to release an inmate to home confinement.

On September 21, 2020, I emailed the Warden of FCI Oakdale I, Sekou Ma'at, and requested that Mr. Christie be released pursuant to 18 U.S.C. § 3582(c)(1)(A) and 28 C.F.R. § 571.61. More than thirty days have elapsed since the request for Mr. Christie's release without a response from the Warden of FCI Oakdale I. Therefore, Mr. Christie has exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A).

### **Mr. Christie's Hypertension, Obesity & Overall Poor Health Leave Him Vulnerable to a Severe Infection from Covid-19**

After nearly twelve years of incarceration, Mr. Christie finds himself in poor health and is considered a "chronic care patient" by the BOP. (Dkt. No. 284-4). Of Mr. Christie's many maladies, his obesity and hypertension most significantly correlate to an elevated risk from a COVID-19 infection. Mr. Christie's medical records from September 3, 2020 list his height at 70 inches and weight at 270 pounds. His height to weight ratio converts to a Body Mass Index (BMI) of 38.7, within the range of clinically obese, and approaching the threshold of severe obesity, defined as a BMI of greater than 40.[2] An analysis of 75 studies on the relationship between obesity and COVID-19 show a greater than 46 percent increase in the hospitalization and a 48 percent increase in deaths of obese patients with COVID-19.[3]

BOP medical records indicate that Mr. Christie was first diagnosed with hypertension in February of 2016. He is currently prescribed a 25mg daily dose of hydrochlorothiazide, a diuretic that removes water and sodium to lower blood pressure, and two 25mg daily doses of metoprolol, a beta blocker causing the heart to beat slower with less force. According to the most recent guidelines, patients with blood pressure consistently at 130/80 mm Hg or higher meet the criteria for hypertension.[4] Mr. Christie's BOP medical records indicate that his blood pressure was 110/65 on September 3, 2020, declining from 140/88 on May 7, 2020, but has been as high as 148/84 on December 26, 2019. Of the patients hospitalized in the New York area for COVID-19, 94 percent reported a chronic health problem, including the two most prevalent conditions hypertension (56.6 percent) and obesity (41.7 percent).[5]

---

[2] *See, Overweight, Obesity, and Severe Obesity,* Centers for Disease Control and Prevention available at *https*://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last visited October 23, 2020).

[3] See, Barry M. Popkin et al. *Individuals with obesity and COVID-19: A global perspective on the epidemiology and biological relationships*, Obesity Reviews (Vol. 21, Iss. 11 Nov. 2020) available at https://onlinelibrary.wiley.com/doi/10.1111/obr.13128 (last visited October 23, 2020).

[4] *See e.g Understanding Blood Pressure Readings,* American Heart Association, available at https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings) (last visited October 23, 2020).

[5] *See,* Safiya Richardson, MD et al., *Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area*, JAMA (April 22, 2020) available at https://jamanetwork.com/journals/jama/fullarticle/2765184 (last visited October 23, 2020).

While Mr. Christie's most recent medical records show a lower blood pressure level, there is concern that the medications prescribed to achieve the decrease in his blood pressure may increase his risk to COVID-19. Diuretics and beta blockers, like hydrochlorothiazide and metoprolol, affect the angiotensin converting enzyme (ACE) 2 that "acts as the receptor for SARS-COV-2 to enter into the cells…[a]s a result angiotensin receptor blockers (ARBs) and ACE 2 inhibitors have been at the center of attention during the present epidemic."[6]

According to BOP medical records, Mr. Christie frequently suffers from hemorrhoids.[7] His venous insufficiency requires him to wear a compression garment on his leg to compensate for his circulatory system's inability to properly pump blood throughout his body. *Id.* A sebaceous cyst grows on his groin. *Id.* The pulp of his teeth is dying. *Id.* He has a hole in his molar. *Id.* For unspecified reasons, his lungs do not fully expand. *Id.* The BOP granted and later revoked Mr. Christie's request for an assignment to a lower bunk after side effects from medication made him unfit to climb to the top bunk. We respectfully submit that Mr. Christie's poor health collectively, and his hypertension and obesity specifically, during the COVID-19 pandemic constitute "extraordinary and compelling reasons" within the meaning of 18 U.S.C. § 3582(c)(1)(A)(i) to reduce his sentence to the approximately 141 months of imprisonment that he has already served.

Judges in this district have granted motions for sentence reductions under 18 U.S.C. § 3582(c)(1)(A) during the pandemic for defendants ailing from similar health problems. *See e.g. United States v. Anderson*, 16 Cr. 824 (JMF), Dkt. 83 (granting compassionate release for non-violent drug offense for defendant with severe obesity who served two thirds of an eighty-four-month sentence); *United States v. Louis Brown*, 18 Cr. 390 (PAE), Dkt. 472 (granting compassionate release for non-violent drug offense for defendant with multiple health problems including hypertension); *United States v. Davies*, 18 Cr. 390 (PAE), Dkt. 479 (granting compassionate release for drug offense for defendant with high blood pressure, hypertension, and obesity); *United States v. Jose Gonzalez*, 12 Cr. 326 (JMF), 05 Cr. 1292 (JMF), Dkt. 77 (granting compassionate release for drug crimes for defendant with chronic hypertension and obesity).

### Mr. Christie Faces a Greater Risk of Infection while Incarcerated in the BOP

FCI Oakdale ranks among the BOP facilities hardest-hit by COVID-19. It suffered the first coronavirus death in the federal prison system.[8] Nearly 21 percent of the 949 inmates at FCI Oakdale tested positive for COVID-19.[9] Eight inmates at FCI Oakdale I have died from

---

[6] *See*, Vasiliki Tsolaki, PhD, et al. *Increased mortality among hypertensive COVID-19 patients: Pay a closer look on diuretics in mechanically ventilated patients*, Heart Lung (2020 June 3) available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7309809/ (last visited October 23, 2020).

[7] Mr. Christie's medical records have been filed under seal as Exhibit A.

[8] *See,* Janet Reitman, *'Something Is Going to Explode': When Coronavirus Strikes a Prison,* N.Y. Times, Apr. 18, 2020, available at https://www.nytimes.com/2020/04/18/magazine/oakdale-federal-prison-coronavirus.html (last visited October 23, 2020).

[9] *See,* Luke Barr, *More Than 1 out of 3 Tested Federal Inmates were Positive for Coronavirus,* ABC News, June 16, 2020, available at

COVID-19.[10] Mr. Christie reports that three of the eight deaths occurred in his housing unit. Subsequently, the BOP replaced the Warden of FCI Oakdale I.[11]

The ACLU's class action lawsuit on behalf of FCI Oakdale's medically vulnerable inmates, *Livas v. Myers,* outlined how their conditions of confinement would facilitate the spread of COVID-19 within the facility: the inability to socially distance; the lack of hand sanitizer; and the scant availability of personal protective equipment.[12] The allegations in the ACLU lawsuit tragically predicted FCI Oakdale's high rates of COVID-19 infections and deaths.

Although Mr. Christie has tested negative for COVID-19, he remains among the medically vulnerable inmates at FCI Oakdale. His high risk of a COVID-19 infection compounds over time while he remains incarcerated. As alleged in the *Livas* complaint, CDC procedures recommended to prevent COVID-19 infection are impossible to comply with at FCI Oakdale.

### 3553(a) Factors Favor Mr. Christie's Immediate Release during the COVID-19 Pandemic

The Court sentenced Mr. Christie to 240-months imprisonment for his role in a conspiracy to import and distribute more than 150 pounds of marijuana and more than 150 kilograms of cocaine from Jamaica to the United States via commercial airlines. It is respectfully submitted that Mr. Christie's term of imprisonment has already fulfilled the original sentence's purposes of retribution, deterrence, and incapacitation.

In addition to the risk posed to Mr. Christie's health, COVID-19 has necessitated lockdowns and restrictions to control the pandemic. These harsh conditions of confinement have increased the severity of Mr. Christie's incarceration far beyond what the Court anticipated when imposing sentence. During the COVID-19 pandemic, Mr. Christie sat in fear as members of his unit died, knowing that his medical condition left him vulnerable to a severe infection from COVID-19.

In his letter to the Court, Mr. Christie recounts how his mother's illness and a falling out with his father left him homeless as a teenager in Jamaica. *See attached* (Letter from David Christie).[13] Mr. Christie writes that after failed attempts to start a legitimate business, he started to "trod a path which I now regret and have concluded can only lead to death or imprisonment." *Id.* During his incarceration he has experienced what he calls a "renewing of the mind" and dedicated himself to his faith. *Id.* He is studying for a degree in Bible and Theology and availed

---

https://abcnews.go.com/Politics/tested-federal-inmates-positive-coronavirus/story?id=71275461 (last visited October 23, 2020).

[10] *See, Eighth Inmate Death from COVID-19 Reported at FCI Oakdale I,* KALB, May 9, 2020, available at https://www.kalb.com/content/news/Eighth-inmate-death-from-COVID-19-reported-at-FCI-Oakdale-I-570340691.html (last visited October 23, 2020).

[11] *See, Bureau of Prisons removes Rod Myers as warden of Federal Correctional Institution in Oakdale*, KALB, May 22, 2020, available at https://www.kalb.com/content/news/Bureau-of-Prisons-removes-Rod-Myers-as-warden-of-Oakdale-Correctional-Institute-570701811.html (last visited October 23, 2020)

[12] *Livas v. Myers*, 20 cv 422 (W.D.LA. 2020), Dkt 1.

[13] Letters to the Court from Mr. Christie and his family are attached as Ex. B.

himself of the education opportunities available within the BOP.[14]  He has a single disciplinary infraction during his more than eleven years of incarceration from a minor altercation with another inmate.  His overall prison record demonstrates his faith and efforts to rehabilitate himself.

Mr. Christie retains the support of his children, who are eager for him to return home.  His son Jason was twelve years old at the time of Mr. Christie's incarceration and hopes to "share a moment" at his upcoming graduation with his father, who has already missed "some of the most important years of [his] life."  *See attached* (Letter from Jason Christie).  His oldest son, David Christie Jr., describes his father as "loving, caring, genuine, passionate, and motivating" and hopes to have his father at his wedding and as a grandfather to his children.  *See attached* (Letter from David Christie Jr.).  His daughter, Davia, writes that her father now understands that his actions "were not only illegal, but shameful in many ways."  She has seen him "grow immensely" during his incarceration.  *See attached* (Letter from Davia Christie).  Mr. Christie's strong family support will help him effectively transition back into society.

The First Step Act "freed district courts to consider any potentially extraordinary and compelling reasons that a defendant might raise for compassionate release."  *Brooker,* 2020 WL 5739712, at *7.  We respectfully submit that the totality of circumstances before the Court provide "extraordinary and compelling reasons" to resentence Mr. Christie to time served.

**Conclusion**
Mr. Christie braces for this winter's second wave of the COVID-19 pandemic after experiencing the first wave in a hard-hit facility.  He has already served eleven years and nine months on a non-violent drug offense, approximately 69 percent of his total sentence and in excess of the mandatory minimum of ten years imprisonment.  With no cure or vaccine in sight, Mr. Christie's sentence now presents an unacceptable threat to his health and life.  We submit to the Court that COVID-19's risk to Mr. Christie's health qualifies as "extraordinary and compelling reasons" to resentence Mr. Christie, who is not eligible for home confinement due to his immigration status, to time served.

Sincerely,

Steven E. Lynch, Esq.
*Counsel for David Christie*

Cc:  AUSA Robert Sobelman (by ECF)

---

[14] Mr. Christie's transcript from Global University and Inmate Education Data are attached as *Ex. C*.